| | | |
|---|---|---|
| JOSEPH PRAUSE, Individually and On Behalf of All Others Similarly Situated, | § § § § § § § § § § § § § § § | Case No. 4:17-cv-2368 |
| Plaintiff, | | |
| v. | | JURY TRIAL DEMANDED |
| TECHNIPFMC PLC, DOUGLAS J. PFERDEHIRT and MARYANN T. MANNEN, | | |
| Defendants. | | |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Prause ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding TechnipFMC plc ("TechnipFMC" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired TechnipFMC securities

between April 27, 2017 and July 24, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. TechnipFMC plc provides oilfield services. The Company offers subsea, surface, onshore, and offshore solutions for oil and gas projects. TechnipFMC serves customers worldwide. TechnipFMC was formed through the merger of FMC Technologies Inc. and French oil-services Technip SA.

3. The Company is headquartered in London, the United Kingdom. TechnipFMC's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "FTI."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) TechnipFMC had a material weakness in its internal control over rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects; (ii) accordingly, the Company lacked effective internal controls over financial reporting; and (iii) as a result of the foregoing, TechnipFMC's public statements were materially false and misleading at all relevant times.

5. On July 24, 2017, post-market, TechnipFMC issued a press release and filed a Current Report on Form 8-K with the SEC, announcing that the Company would restate its financial statements as of March 31, 2017, as these statements could no longer be relied upon. The press release stated, in relevant part:

On July 24, 2017, the Audit Committee of the Board of Directors of TechnipFMC plc, after consideration of relevant facts and circumstances and after consultation with management and PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, *concluded that the Company's unaudited interim condensed consolidated U.S. GAAP financial statements as of March 31, 2017 and for the three months ended March 31, 2017* included in the Company's Quarterly Report on Form 10-Q and prior year period prepared and included in the Company's Quarterly Report for comparison purposes for the quarter ended March 31, 2017, as previously filed with the U.S. Securities and Exchange Commission (the "SEC") on May 4, 2017, *should be restated*, and that such *financial statements previously filed with the SEC should no longer be relied upon because of material errors in such financial statements.*

The Company *concluded that errors existed within certain rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects* in the Company's unaudited Condensed Consolidated Balance Sheets and Condensed Consolidated Statements of Income for the quarter ended March 31, 2017. *The net income attributable to the Company in the quarter ending March 31, 2017 was overstated by $209.5 million ($0.45 per share)*.

The Company will restate the unaudited interim condensed consolidated financial statements identified above as set forth in the schedules attached as Exhibit 99.1 to this Current Report on Form 8-K to recognize the non-cash, corporate charges and file such restated condensed consolidated financial statements with the SEC in an amendment to the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2017 (the "10-Q Amendment").

In connection with the 10-Q Amendment, the Company re-evaluated its conclusion regarding the effectiveness of the Company's disclosure controls and procedures and internal control over financial reporting as of March 31, 2017 and *determined that a material weakness existed as of March 31, 2017 relating to the rates used in calculations of foreign currency effects on certain of the Company's engineering and construction projects.*

Solely as a result of the material weakness described above, the Company expects to *conclude that the Company's disclosure controls and procedures and its internal control over financial reporting were not effective as of March 31, 2017.* The Company has reviewed the process to calculate the foreign currency re-measurement effect and has implemented revisions and additional controls designed to ensure that similar computational errors will not recur. The Company believes that these changes provide reasonable assurance that the financial statements and other financial information for the three and six month periods ending June 30, 2017 fairly present in all material respects the Company's financial condition, results of operations and cash flows as of, and for, such periods.

(Emphasis added.)

6. On this news, TechnipFMC's share price fell $0.48, or 1.71%, to close at $27.56 on July 25, 2017.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). TechnipFMC's U.S. executive offices are located within this Judicial District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired TechnipFMC securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant TechnipFMC is headquartered in London, the United Kingdom, with principal executive offices located at One St. Paul's Churchyard, London EC4M 8AP, the United Kingdom, and its U.S. headquarters are located at 11740 Katy Freeway, Energy Tower 3, Houston, Texas 77079. TechnipFMC's shares trade on the NYSE under the ticker symbol "FTI."

14. Defendant Douglas J. Pferdehirt ("Pferdehirt") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

15. Defendant Maryann T. Mannen ("Mannen") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President.

16. The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. TechnipFMC plc provides oilfield services. The Company offers subsea, surface, onshore, and offshore solutions for oil and gas projects. TechnipFMC serves customers worldwide.

### Materially False and Misleading Statements Issued During the Class Period

18. The Class Period begins on April 27, 2017, when TechnipFMC issued a press release and filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 8-K"). Therein, the Company, stated, in relevant part:

> **LONDON, PARIS, HOUSTON, April 26, 2017** - TechnipFMC plc (NYSE and Euronext: FTI) today reported first quarter 2017 revenue of $3.4 billion.
>
> Diluted earnings per share were $0.41, which includes total Company pre-tax charges and credits of $193.5 million, or $0.30 per diluted share as detailed in the attached financial schedules. Adjusted diluted earnings per share were $0.71.

5

Total Company net income was $190.8 million, including corporate income due to foreign exchange gains; adjusted EBITDA was $684.4 million.

The Company also announced that its Board of Directors approved a capital allocation plan that includes the authorization of a share repurchase program of up to $500 million of the Company's stock to be completed by the end of 2018 and planning for a quarterly dividend following third quarter 2017 results. The implementation of this capital allocation program is subject to U.K. required approval of distributable reserves, which is expected to be completed in the third quarter of 2017.

"Our merger is completed. We are now leveraging the unparalleled breadth of capabilities of TechnipFMC - from our industry-leading front-end engineering, our culture of innovation that is bringing to market next-generation solutions, to our reputation of superior project management," said Doug Pferdehirt, CEO of TechnipFMC. "These capabilities, coupled with our unique commercial alignment to deliver efficiencies across the value chain, allow us to drive the change required for real, sustainable improvement to project economics - improvements which enable our customers to sanction more projects with greater confidence in cost and time to production."

"Although the global energy market remains challenged, we benefit from the recovery of the short-cycle North America market as well as strong execution on our backlog of longer cycle projects."

"In subsea, market acceptance of our combined offering has been demonstrated by an acceleration of front-end studies. These studies are being converted to iEPCI™ awards including the Shell Kaikias project. Other recent project awards, including our award of ExxonMobil Liza, further illustrate returning confidence in the subsea market."

Pferdehirt added, "Execution remains fundamental to our performance, and our strong project management capability has been demonstrated, for example, in our LNG project portfolio which delivered Petronas Satu, the first-ever floating LNG (FLNG) to be operational, and continues to make progress on both the Shell Prelude FLNG and Yamal LNG projects."

Pferdehirt concluded, "As our first quarter results have shown, it is the remarkable women and men of TechnipFMC - now working together - who provide the unparalleled ability and determination to drive real change required in our industry."

**Order Intake and Backlog**

During the first quarter of 2017, the Company's order intake was $1.6 billion. The breakdown by business segment was as follows:

- Subsea order intake of $666 million;

- Onshore/Offshore order intake of $682 million; and
- Surface Technologies order intake of $241.5 million.

At the end of the first quarter 2017, the Company's backlog was $16.1 billion, composed of the following:

- Subsea backlog of $6.6 billion;
- Onshore/Offshore backlog of $9.1 billion; and
- Surface Technologies backlog of $0.4 billion.

**Operational and Financial Highlights - First Quarter 2017[2]**

**Subsea**

Subsea reported first quarter revenues of $1.4 billion. Major projects include Total Kaombo and Moho Nord, and ENI Jangkrik.

Revenues were down 42 percent, primarily due to a reduction in project activity within Europe and Africa, partially offset by increased project activity in Asia Pacific. Prior-year declines in inbound orders continue to impact near-term revenues.

Vessel utilization rate for the first quarter of 2017 was 68 percent, down from the 78 percent rate in the fourth quarter of 2016.

Subsea reported operating profit of $54.2 million; adjusted EBITDA was $238.6 million with margins of 17.3 percent. Adjusted EBITDA margins increased from the prior year pro forma results, despite the 42 percent revenue decline. Operating performance reflected the results of strong project execution, cost reductions, and restructuring.

**Onshore/Offshore**

Onshore/Offshore reported first quarter revenues of $1.8 billion. Major projects include Yamal LNG, Shell Prelude FLNG, and SIBUR Zapsib 2.

Revenues declined 19 percent from the prior-year quarter on a pro forma basis, which includes the full consolidation of Yamal LNG. Revenues were lower as a result of reduced project activity, notably in the Middle East and Americas.

Onshore/Offshore reported operating profit of $139.9 million; adjusted EBITDA was $152.2 million with margins of 8.6 percent.

Adjusted EBITDA and margins improved year-over-year, compared with the pro forma results, despite the revenue decline as project profitability improved with the achievement of key construction milestones.

**Surface Technologies**

Surface Technologies reported first quarter revenue of $248.4 million. Revenues were down 29 percent from the prior-year quarter, due in part to the exclusion of the first sixteen days of the current year quarter. In addition, the favorable impact from the continuing recovery in North America was partially offset by competitive pricing in international markets and lower product sales.

Surface Technologies reported an operating loss of $18.6 million; adjusted EBITDA was $36 million with margins of 14.5 percent.

Adjusted EBITDA and margins significantly improved year-over-year, despite the revenue decline primarily due to the benefit of product mix related to fluid control sales and a more favorable cost structure.

**Corporate Items**

Corporate income in the first quarter was $204.2 million, which included charges and credits of $51.1 million. The income in the quarter was primarily due to foreign exchange gains of $306.9 million.

Net interest expense was $81.7 million in the quarter, including $67.7 million from the re-measurement of a liability payable to joint venture partners.

Total depreciation and amortization for the first quarter was $154.1 million, including depreciation and amortization related to purchase price accounting for the merger of $42.9 million.

Capital expenditures were $51.2 million.

The Company recorded a tax provision of $103.7 million. The reported tax rate was 34.8 percent. Excluding the effects of the liability re-measurement within net interest expense, for which there is no tax benefit, the effective tax rate was 28.4 percent for the first quarter.

19. On May 4, 2017, TechnipFMC filed a Current Report on Form 10-Q with the SEC, reporting in full the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q"). The Q1 2017 10-Q reiterated the financial and operating results previously announced in the Q1 2017 8-K. For the quarter, TechnipFMC reported net income of $190.80 million, or $0.41 per diluted share, on revenue of $3.38 billion, compared to net income of $147.40 million, or $1.21 per diluted share, on revenue of $2.4 billion for the same period in the prior year.

20. In the Q1 2017 10-Q, the Company stated, in relevant part:

**ITEM 4. CONTROLS AND PROCEDURES**

As of March 31, 2017, and under the direction of our principal executive officer and principal financial officer, we have evaluated the effectiveness of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act. Based upon this evaluation, our principal executive officer and principal financial officer have ***concluded as of March 31, 2017, that our disclosure controls and procedures were:***

i) ***effective*** in ensuring that information required to be disclosed in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms; and

ii) ***effective*** in ensuring that information required to be disclosed in reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our principal executive officer and principal financial officer, as appropriate to allow timely decisions regarding required disclosure.

Due to the Merger, there were changes in the Company's internal control over financial reporting intended to enhance overall internal control over disclosure controls and procedures and financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act for the quarter ended March 31, 2017.

(Emphasis added.)

21. The Q1 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22. The statements referenced in ¶¶ 18-21 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) TechnipFMC had a material weakness in its internal control over rates used in the calculations

9

of the foreign currency effects on certain of its engineering and construction projects; (ii) accordingly, the Company lacked effective internal controls over financial reporting; and (iii) as a result of the foregoing, TechnipFMC's public statements were materially false and misleading at all relevant times.

### **The Truth Emerges**

23. On July 24, 2017, *post-market*, TechnipFMC issued a press release and filed a Current Report on Form 8-K with the SEC, announcing that the Company would restate its financial statements as of March 31, 2017, as these statements could no longer be relied upon. The press release stated, in relevant part:

> On July 24, 2017, the Audit Committee of the Board of Directors of TechnipFMC plc, after consideration of relevant facts and circumstances and after consultation with management and PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, ***concluded that the Company's unaudited interim condensed consolidated U.S. GAAP financial statements as of March 31, 2017 and for the three months ended March 31, 2017*** included in the Company's Quarterly Report on Form 10-Q and prior year period prepared and included in the Company's Quarterly Report for comparison purposes for the quarter ended March 31, 2017, as previously filed with the U.S. Securities and Exchange Commission (the "SEC") on May 4, 2017, ***should be restated***, and that such ***financial statements previously filed with the SEC should no longer be relied upon because of material errors in such financial statements.***
>
> The Company ***concluded that errors existed within certain rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects*** in the Company's unaudited Condensed Consolidated Balance Sheets and Condensed Consolidated Statements of Income for the quarter ended March 31, 2017. ***The net income attributable to the Company in the quarter ending March 31, 2017 was overstated by $209.5 million ($0.45 per share)***.
>
> The Company will restate the unaudited interim condensed consolidated financial statements identified above as set forth in the schedules attached as Exhibit 99.1 to this Current Report on Form 8-K to recognize the non-cash, corporate charges and file such restated condensed consolidated financial statements with the SEC in an amendment to the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2017 (the "10-Q Amendment").

In connection with the 10-Q Amendment, the Company re-evaluated its conclusion regarding the effectiveness of the Company's disclosure controls and procedures and internal control over financial reporting as of March 31, 2017 and ***determined that a material weakness existed as of March 31, 2017 relating to the rates used in calculations of foreign currency effects on certain of the Company's engineering and construction projects.***

Solely as a result of the material weakness described above, the Company expects to ***conclude that the Company's disclosure controls and procedures and its internal control over financial reporting were not effective as of March 31, 2017.*** The Company has reviewed the process to calculate the foreign currency re-measurement effect and has implemented revisions and additional controls designed to ensure that similar computational errors will not recur. The Company believes that these changes provide reasonable assurance that the financial statements and other financial information for the three and six month periods ending June 30, 2017 fairly present in all material respects the Company's financial condition, results of operations and cash flows as of, and for, such periods.

(Emphasis added.)

24. On this news, TechnipFMC's share price fell $0.48, or 1.71%, to close at $27.56 on July 25, 2017.

25. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired TechnipFMC securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, TechnipFMC securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by TechnipFMC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of TechnipFMC;

- whether the Individual Defendants caused TechnipFMC to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of TechnipFMC securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- TechnipFMC securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold TechnipFMC securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

33. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

35. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of TechnipFMC securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire TechnipFMC securities and options at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

38. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for TechnipFMC securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about TechnipFMC's finances and business prospects.

39. By virtue of their positions at TechnipFMC, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

40. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of TechnipFMC, the Individual Defendants had knowledge of the details of TechnipFMC's internal affairs.

41. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of TechnipFMC. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to TechnipFMC's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of TechnipFMC securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning TechnipFMC's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired TechnipFMC securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

42. During the Class Period, TechnipFMC securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of TechnipFMC securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of TechnipFMC securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of TechnipFMC

securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

43. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

44. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. During the Class Period, the Individual Defendants participated in the operation and management of TechnipFMC, and conducted and participated, directly and indirectly, in the conduct of TechnipFMC's business affairs. Because of their senior positions, they knew the adverse non-public information about TechnipFMC's misstatement of income and expenses and false financial statements.

47. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to TechnipFMC's financial condition and results of operations, and to correct promptly any public statements issued by TechnipFMC which had become materially false or misleading.

48. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which TechnipFMC disseminated in the marketplace during the Class Period concerning TechnipFMC's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause TechnipFMC to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of TechnipFMC within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of TechnipFMC securities.

49. Each of the Individual Defendants, therefore, acted as a controlling person of TechnipFMC. By reason of their senior management positions and/or being directors of TechnipFMC, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, TechnipFMC to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of TechnipFMC and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

50. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by TechnipFMC.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: August 3, 2017

        Respectfully submitted,

*/s/ Willie C. Briscoe*
Willie C. Briscoe
Texas Bar No.: 24001788
Southern District No.: 25157
The Briscoe Law Firm, PLLC
3131 McKinney Avenue, Suite 600
Dallas, Texas 752014
214-643-6011
281-254-7789 (Facsimile)
wbriscoe@thebriscoelawfirm.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*