## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSEPH PRAUSE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TECHNIPFMC PLC, TORE HALVORSEN, MARYANN T. MANNEN, DOUGLAS J. PFERDEHIRT, and DIANNE B. RALSTON<br><br>Defendants. | **Case No.  4:17-cv-02368**<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   JURISDICTION AND VENUE ................................................................................... 4

III.  PARTIES ....................................................................................................................... 5

IV.   SUBSTANTIVE ALLEGATIONS ............................................................................. 6

    A.    Background .......................................................................................................... 6

    B.    Technip Repeatedly Used Wrong Exchange Rates in Preparing Its Financial
        Statements ............................................................................................................ 8

    C.    Technip Merged with FMC and the Company Filed a Registration Statement...... 9

    D.    TechnipFMC Issued All New Shares Pursuant to a Registration Statement that
        Falsely Assured Investors that the Company Used Proper Foreign Exchange
        Conversions......................................................................................................... 10

        1.    TechnipFMC Wrongly Assured Investors that Its Financial Data Was
            Calculated in Accordance with International Standards ........................... 11

        2.    As a Result of Using Incorrect Exchange Rates, TechnipFMC's
            Financial Data in the Registration Statement Contained Material
            Errors....................................................................................................... 11

    E.    TechnipFMC's Quarterly Report for the First Quarter of 2017 Likewise
        Falsely Assured Investors that the Company Used Proper Foreign Exchange
        Conversions, and Contained Materially Misstated Key Financial Data ............... 12

    F.    When TechnipFMC Amended Its Quarterly Report for the First Quarter
        of 2017 to Correct Its Misstatements of Key Financial Data, TechnipFMC's
        Stock Price Dropped .......................................................................................... 13

V.    DEFENDANTS' FALSE AND MISLEADING STATEMENTS ................................... 14

VI.   SCIENTER ALLEGATIONS (ALLEGED ONLY FOR COUNTS III AND IV)........... 20

VII.  CLASS ACTION ALLEGATIONS ............................................................................ 22

VIII. NO SAFE HARBOR .................................................................................................. 25

IX.   COUNT ONE ............................................................................................................... 26

    Violation of Section 11 of the Securities Act Against the Securities Act Defendants ..... 26

X.    COUNT TWO ............................................................................................................... 27

    Violation of Section 15 of the Securities Act Against the Securities Act Individual
    Defendants ......................................................................................................................... 27

XI.   COUNT THREE ........................................................................................................... 28

    Violation of Section 10(b) of the Exchange Act and  Rule 10b-5 Promulgated
    Thereunder Against the Exchange Act Defendants .......................................................... 28

XII.    COUNT FOUR ................................................................................................... 29

      Violation of Section 20(a) of the Exchange Act Against  the Exchange Act
      Individual Defendants ...................................................................................... 29

XIII.   PRAYER FOR RELIEF ..................................................................................... 30

XIV.   JURY TRIAL DEMANDED .............................................................................. 31

Lead Plaintiff Joseph Prause ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against TechnipFMC plc ("TechnipFMC " or the "Company"), Tore Halverson, Maryann T. Mannen, Douglas Pferdehirt, and Dianne Ralston (collectively, "Defendants"), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding TechnipFMC, analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

## I.    INTRODUCTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired TechnipFMC securities (including but not limited to shares acquired through the merger of FMC Technologies Inc., FMC Technologies SIS Limited and Technip S.A.) in the U.S. between the date of the first such acquisition (which occurred no later than January 16, 2017) and July 24, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").

2.    The class also seeks to recover damages sustained during the Class Period under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

3.    TechnipFMC provides services for the energy industry that cover all aspects of oil and gas project lifecycles.  The Company was formed in January 2017 through the merger of

FMC Technologies Inc. and the French oil-services company Technip S.A.   TechnipFMC operates in numerous countries and often conducts transactions relating to its projects in the local currency.   When TechnipFMC reports its financial results each quarter, it converts the value of these transactions in local currency into dollars and/or euros (the "reporting currency") for the purpose of this reporting.

4.       For at least a year prior to the merger, Technip S.A. had been miscalculating and misreporting its net income for a simple reason:   Technip S.A. was using wrong exchange rates when converting certain foreign currencies (including the Russian ruble) into euros for financial reporting.   As a result, Technip S.A. repeatedly overstated its key financial metrics, including its net income, by tens of millions of euros.

5.       In January 2017, when Technip S.A. merged with FMC Technologies Inc., the new Company issued all new stock pursuant to a registration statement it filed with the SEC.   In this registration statement, TechnipFMC likewise used wrong exchange rates, just as Technip S.A. had done in its prior reporting, yet TechnipFMC assured investors that its foreign exchange conversions were calculated properly and that its financial statements had been prepared in accordance with widely accepted accounting standards.   These egregious misstatements regarding Technip S.A.'s key financial metrics obviously were material to investors—investors heavily rely on a predecessor company's key financial metrics, such as its net income, in valuing a company resulting from a merger.   Perhaps even more importantly, TechnipFMC's misstatements that it prepared its financial statements using appropriate foreign exchange conversions were material to investors because investors cared that TechnipFMC systematically used wrong foreign exchange conversions and so was unable accurately to report its key financial results.

6.     Even months after the merger, TechnipFMC continued to misstate key financial data due to the same problem of using the wrong exchange rate in converting the value of foreign transactions for financial reporting.  In its first quarterly report filed with the SEC on May 4, 2017, TechnipFMC overstated its net income by *over $200 million*.

7.     Ultimately, when investors discovered that the Company's financial reporting could not be trusted, TechnipFMC's share price took a significant hit.  On July 24, 2017, post-market, TechnipFMC announced that the Company had to restate its financial statements as of March 31, 2017, and that these statements could no longer be relied upon.  The Company admitted that "errors existed within certain rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects" and that therefore, "the Company's disclosure controls and procedures and its internal control over financial reporting" had not been effective.  On this news, TechnipFMC's share price fell $0.48, or 1.71%, to close at $27.56 on July 25, 2017, on unusually heavy trading volume.

8.     TechnipFMC clearly violated Section 11 of the Securities Act during the Class Period.  In TechnipFMC's registration statement, pursuant to which it issued all new stock for the newly formed Company, TechnipFMC made material misstatements concerning its financial data, the propriety of its foreign currency conversions, and its compliance with international accounting standards.   When investors learned that TechnipFMC had been misstating its financial data due to using an incorrect exchange rate and that the Company clearly had no control over its financial reporting, TechnipFMC's share price dropped significantly.   These simple facts alone constitute a violation of Section 11.

9.     (*This paragraph applies only to Counts III and IV.*)  TechnipFMC also clearly violated Section 10(b) of the Exchange Act during the Class Period.   In the registration

statement, TechnipFMC overstated net income by approximately $37 million.  In its first quarter 2017 quarterly report, TechnipFMC overstated its net income by over $200 million, or *1378%*. The Company could not have failed to know about these massive overstatements.  Alternatively, if somehow, the overstatements were not expressly known to the Company, the Company was so extremely reckless in not knowing about them that scienter may be ascribed to the Company.

10.     Through its false and misleading statements, and the subsequent revelation that the Company's financial reporting could not be trusted, TechnipFMC caused significant damages to investors.

## II.     JURISDICTION AND VENUE

11.     Certain claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

12.     Additional claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

14.     This Court also has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b). TechnipFMC's U.S. executive offices are located within this Judicial District.

16.     Venue is also proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).

17.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

4

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

### III.    PARTIES

18.    Lead Plaintiff Joseph Prause, as set forth in the previously filed Certification, acquired TechnipFMC securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

19.    Defendant TechnipFMC's U.S. headquarters are located at 11740 Katy Freeway, Energy Tower 3, Houston, Texas 77079.  TechnipFMC's shares trade on the NYSE under the ticker symbol "FTI."

20.    Defendant Tore Halvorsen ("Halvorsen") served as Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, Executive Vice President and Senior Advisor of TechnipFMC during the Class Period.  Defendant Halvorsen served as a Senior Vice President of Subsea Technologies of FMC Technologies, Inc. from 2011 until January 16, 2017. Defendant Halvorsen signed the Registration Statement as a "Director" and "Principal Executive Officer; Principal Financial Officer; Principal Accounting Officer."

21.    Defendant Dianne B. Ralston ("Ralston") served as Executive Vice President, Secretary and Chief Legal Officer of TechnipFMC during the Class Period.  Defendant Ralston served as General Counsel and Corporate Secretary of FMC Technologies, Inc. from January 26, 2015 until January 16, 2017 and served as its Senior Vice President from 2015 until January 16, 2017.  Defendant Ralston signed the Registration Statement as "Authorized Representative in the United States."

22.    Defendants Halvorsen and Ralston are sometimes referred to herein as the "Securities Act Individual Defendants," and together with TechnipFMC, the "Securities Act Defendants."

23.     Defendant Douglas J. Pferdehirt ("Pferdehirt") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

24.     Defendant Maryann T. Mannen ("Mannen") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President.

25.     Defendants Pferdehirt and Mannen are sometimes referred to herein as the "Exchange Act Individual Defendants," and together with TechnipFMC, the "Exchange Act Defendants."

26.     The Securities Act Individual Defendants and Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Individual Defendants."

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Background

27.     TechnipFMC provides services for the energy industry that cover all aspects of oil and gas project lifecycles, including conception, feasibility studies, front end engineering, detailed engineering, procurement, construction, commissioning, test runs, maintenance, and decommissioning.   The Company's services cover subsea, surface, and onshore/offshore solutions for energy industry projects.   Such projects concern, among other things, offshore oil and gas exploration and extraction platforms, rigs, crude oil refinery, petrochemical plants (such as those for Ethylene, Hydrogen, SynGas plants, Naptha, and Benzene), the plastics and rubber industry, fertilizer plants, and onshore or floating liquified natural gas plants.

28.     TechnipFMC serves customers worldwide.   It has 44,000 employees and operates in 48 countries.

29.     TechnipFMC was formed in January 2017 by a merger of Technip S.A. ("Technip"), a French *société anonyme*, and FMC Technologies, Inc. ("FMC"), a United States corporation, as explained further below.

30.     At all relevant times, TechnipFMC purported to follow applicable accounting standards, including International Financial Reporting Standards ("IFRS") and Generally Accepted Accounting Principles ("GAAP"), in its reporting.

31.     IFRS standards are broadly accepted accounting standards set by the International Accounting Standards Board ("IASB") and are widely used by publicly accountable companies, including in Europe.  IFRS standards incorporate the International Accounting Standards ("IAS") except to the extent that the former expressly supersede the latter.  As IASB has stated expressly, "[IAS] Standards have the same status as the IFRS Standards."

32.     IFRS standards require that "financial information must not only represent relevant phenomena, but it must also faithfully represent the phenomena that it purports to represent."  (IFRS QC12.)  A faithful representation is one that, *inter alia*, is "free from error," which simply means that "there are no errors or omissions in the description of the phenomenon, and the process used to produce the reported information has been selected and applied with no errors in the process."  (IRFS QC15.)

33.     Moreover, IAS 21, ¶¶ 38-39, specifically states:

An entity may present its financial statements in any currency (or currencies).  If the presentation currency differs from the entity's functional currency, it translates its results and financial position into the presentation currency . . . .

The results and financial position of an entity whose functional currency is not the currency of a hyperinflationary economy shall be translated into a different presentation currency using the following procedures:  assets liabilities for each statement of financial position presented . . . shall be translated at the closing rate at the date of that statement of financial position; income and expenses for each statement presenting profit or loss and other comprehensive income . . . shall be translated at exchange rates at the dates of the transactions; and all resulting exchange differences shall be recognized in other comprehensive income."

34.     GAAP standards are currently codified in the Accounting Standards Codification ("ACS") from the Financial Accounting Standards Board.   Under GAAP, all elements of

financial statements shall be translated into a reporting currency by using a current exchange rate as follows:  (1) for assets and liabilities, the exchange rate at the balance sheet date shall be used; (2) for revenues, expenses, gains, losses, the exchange rate at the dates on which those elements are recognized shall be used.  (ASC 830-30-45-3.)

### B. Technip Repeatedly Used Wrong Exchange Rates in Preparing Its Financial Statements

35.     Technip conducted transactions for some of its foreign engineering and construction projects in foreign currency.  Technip periodically converted its financial data for a project denominated in a foreign currency into the reporting currency (the euro) for the purposes of its financial reporting.

36.     Beginning at least as early as the first quarter of 2016 (prior to the Class Period), Technip repeatedly reported wrong material financial data as a result of preparing its financial statements using incorrect foreign exchange rates, *i.e.*, exchange rates that were significantly different from the actual exchange rates widely used in financial markets at the relevant times that were applicable under international accounting standards to Technip's financial data. Technip converted the financial data relating to certain projects conducted in foreign currencies (including projects in Russia) into euros for the purposes of its financial reporting, and when Technip performed these conversions, it used wrong foreign exchange rates, including an incorrect exchange rate for the Russian ruble for projects denominated in that currency.

37.     On April 28, 2016, Technip materially overstated its first quarter 2016 net income as €114.4 million and diluted earnings per share as €0.94, among other overstatements, due to its

use of wrong exchange rates.  In fact, Technip's first quarter 2016 net income was approximately €109.2 million and its diluted earnings per share were approximately €0.88.[1]

38.     Likewise, on July 28, 2016, Technip materially overstated its second quarter 2016 net income as €123.3 million and diluted earnings per share as €1.03, among other overstatements, due to its use of wrong exchange rates.  In fact, Technip's second quarter 2016 net income was approximately €92.1 million and its diluted earnings per share were approximately €0.74.[2]

### C.     Technip Merged with FMC and the Company Filed a Registration Statement

39.     On May 18, 2016, FMC Technologies, Inc., FMC Technologies SIS Limited ("FMC SIS"), and Technip S.A. entered into a binding Memorandum of Understanding (incorporated here by reference) in the U.S. in which the two entities agreed to merge. Subsequently, FMC, FMC SIS and Technip entered into a definitive business combination agreement (the "BCA," incorporated here by reference) on June 14, 2016 via email exchange in the U.S.  FMC Technologies SIS Limited was formed prior to the merger to serve as the legal entity into which FMC and Technip would merge under the terms of the BCA.  On August 4, 2016, the legal name of FMC Technologies SIS Limited was changed to TechnipFMC Limited.

40.     On August 10, 2016, TechnipFMC Limited filed a registration statement on Form S-4 to register the securities to be offered by the post-merger entity.  On October 21, 2016, TechnipFMC Limited filed the third amendment to its registration statement on Form S-4

---

[1] Net income of $120.6 for the three months ended March 31, 2016 (per Technip's 1Q 2016 10-Q/A) divided by the average foreign exchange rate for euros to dollars for that period of 1.1044 (calculated from public foreign exchange rates available at www.xe.com) results in €109.2.  €109.2 divided by diluted weighted average shares outstanding on March 31, 2016 of 124.4 results in €0.88.

[2] Net income of $103.8 for the three months ended June 30, 2016 (per Technip's 2Q 2016 10-Q) divided by the average foreign exchange rate for that period of 1.1270 (calculated from public foreign exchange rates available at www.xe.com) results in €92.1.  €92.1 divided by diluted weighted average shares outstanding on June 30, 2016 6/30/16 of 125.2 results in €0.74.

(Registration No. 333-213067), and on October 24, 2016, the SEC declared the registration statement effective (the "October 24, 2016 Registration Statement," incorporated here by reference). The October 24, 2016 Registration Statement, by its own terms, also served as the prospectus pursuant to which TechnipFMC issued shares. TechnipFMC filed the final prospectus, incorporated into the October 24, 2016 Registration Statement, under Rule 424(b) under the Securities Act on October 25, 2016, (the "Prospectus," incorporated here by reference).

41.   On January 11, 2017, TechnipFMC Limited was re-registered as TechnipFMC plc, a public limited company incorporated under the laws of England and Wales.

42.   On January 16, 2017, the merger was completed. Technip and FMC merged with and into TechnipFMC, and TechnipFMC continued as the surviving company.

**D.    TechnipFMC Issued All New Shares Pursuant to a Registration Statement that Falsely Assured Investors that the Company Used Proper Foreign Exchange Conversions**

43.   Pursuant to the terms of the BCA, on January 16, 2017, each ordinary share of Technip was converted into two ordinary shares of TechnipFMC, and holders of shares of FMC received a right to one ordinary share of TechnipFMC for each share of FMC that they held. In this way, TechnipFMC issued its first ordinary shares on January 16, 2017. All shares were issued pursuant to the October 24, 2016 Registration Statement.[3]

44.   The Registration Statement contained financial data for Technip, and this data, reviewed and presented by TechnipFMC, contained some of the same material overstatements that had been presented previously in Technip's financial statements for the first and second

---

[3] All shares subsequently issued during the Class Period likewise were issued pursuant to the October 24, 2016 Registration Statement, or pursuant to registration statements filed February 27, 2017 on form S-8 expressly incorporating the Prospectus and therefore containing misrepresentations and omissions identical to those in the October 24, 2016 Registration Statement. Such registration statements, together with the October 24, 2016 Registration Statement and the Prospectus incorporated into it, are referred to collectively herein as the "Registration Statement."

quarters of 2016.   As with Technip's overstatements, these overstatements were due to TechnipFMC's converting foreign currency data using wrong foreign currency rates.

### 1. TechnipFMC Wrongly Assured Investors that Its Financial Data Was Calculated in Accordance with International Standards

45.     While TechnipFMC and its predecessor company, Technip, had for over a year been using wrong foreign exchange rates in the conversions of foreign project financial data to the reporting currency, TechnipFMC nevertheless assured investors in its Registration Statement that the financial data it presented had been calculated in accordance with international accounting standards, when the data in fact had not been.

46.     TechnipFMC's massive overstatements of Technip's net income obviously violated any reasonable accounting standards, including IFRS.  As TechnipFMC later admitted, the statement that financial data had been calculated in accordance with IFRS was false because the Company had "errors in the process" of its calculations, and so violated IRFS QC12 and 15. In particular, it had failed to use the exchange rates specified in the IFRS standards (including IAS 21), specifically "the closing rate at the date of that statement of financial position" and the "exchange rates at the dates of the transactions."

### 2. As a Result of Using Incorrect Exchange Rates, TechnipFMC's Financial Data in the Registration Statement Contained Material Errors

47.     The overstatements in its financial data that resulted from TechnipFMC's use of incorrect exchange rates were numerous and highly material.  Perhaps most notably, the Company significantly overstated its net income for the six months ended June 30, 2016.  The Company's "Historical Technip" "Net Income" for the six months ended June 30, 2016, was not $261 million (or €237.4 million), as stated in the Registration Statement, but was instead $224.4

million (or approximately €204.9 million[4]).  That is, TechnipFMC overstated its most recent net income figure prior to the merger by $36.6 million or 16.3%.

48.     These foreign currency exchange rate overstatements impacted TechnipFMC's financial data in numerous additional ways.  For example, the overstatements led TechnipFMC to misstate its other income (expense), income from equity affiliates, net interest expense, provision for income taxes and billings in excess of costs, fair value of intangible assets, other assets, stockholders' equity, certain acquired assets, and its amortization of intangible assets. (TechnipFMC detailed each of these errors and others in its amendment to its quarterly report on Form 10-Q for the first quarter of 2017 ("1Q 2017 10-Q/A," incorporated here by reference).)

### E.     TechnipFMC's Quarterly Report for the First Quarter of 2017 Likewise Falsely Assured Investors that the Company Used Proper Foreign Exchange Conversions, and Contained Materially Misstated Key Financial Data

49.     On April 27, 2017, TechnipFMC issued a press release and announced results for the quarter ended March 31, 2017, which it subsequently reported in full on Form 10-Q filed with the SEC on May 4, 2017 (the "Q1 2017 10-Q").

50.     In these disclosures, TechnipFMC again led investors to believe that the Company properly converted its financial data in foreign currencies for the purposes of financial reporting, when in fact, the Company continued to use incorrect exchange rates in these conversions.

51.     As a result of its using wrong exchange rates, TechnipFMC continued to overstate its key financial data.  TechnipFMC stated that its net income for the period was $194.3 million,

---

[4] Net income of $224.4 for the six months ended June 30, 2016 (per Technip's 2Q 2016 10-Q) divided by the average foreign exchange rate for euros to dollars for that period of 1.11411 (calculated from public foreign exchange rates available at www.xe.com) results in €201.4.  Adding to the result €3.5 from IFRS to GAAP adjustments (per the Registration Statement) results in €204.9.

when in fact its net income was (a loss of) -$15.2 million, so TechnipFMC overstated its net income for the period by $209.5 million or *over one thousand percent*.[5]

**F.     When TechnipFMC Amended Its Quarterly Report for the First Quarter of 2017 to Correct Its Misstatements of Key Financial Data, TechnipFMC's Stock Price Dropped**

52.     When the truth began to emerge that TechnipFMC could not be relied upon accurately to report its key financial data because it had been using incorrect foreign exchange rates in preparing its financial statements, the share price for TechnipFMC fell.

53.     On July 24, 2017, post-market, TechnipFMC issued a press release and filed a Current Report on Form 8-K with the SEC, announcing that the Company would restate its financial statements as of March 31, 2017 because "errors existed within certain rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects."   The press release admitted that the Company had to restate its reported financial results for the first quarter of 2017 and "prior year period," and "should no longer be relied upon":

> The Company concluded that errors existed within certain rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects in the Company's unaudited Condensed Consolidated Balance Sheets and Condensed Consolidated Statements of Income for the quarter ended March 31, 2017. The net income attributable to the Company in the quarter ending March 31, 2017 was overstated by $209.5 million ($0.45 per share).

54.     The Company also admitted that it lacked adequate internal controls over financial reporting:

> In connection with the 10-Q Amendment, the Company re-evaluated its conclusion regarding the effectiveness of the Company's disclosure controls and procedures and internal control over financial reporting as of March 31, 2017 and determined that a material weakness existed as of March 31, 2017 relating to the

---

[5] TechnipFMC's overstatement of net income resulted in large part from TechnipFMC's recognition of $306.9 million of net foreign exchange gains.  In fact, TechnipFMC calculated these foreign currency gains using an incorrect foreign currency rate, and so overstated its foreign currency gains by $263.9 million.

rates used in calculations of foreign currency effects on certain of the Company's engineering and construction projects.

Solely as a result of the material weakness described above, the Company expects to conclude that the Company's disclosure controls and procedures and its internal control over financial reporting were not effective as of March 31, 2017.

55.     On this news, TechnipFMC's share price fell $0.48, or 1.71%, to close at $27.56 on July 25, 2017.

56.     On August 4, 2017, TechnipFMC filed its 1Q 2017 10-Q/A, in which the Company admitted that it had misstated key financial data in 2016 and 2017 due to preparing its financial statements using incorrect foreign currency rates.   Also on August 4, 2017, TechnipFMC filed its quarterly report on Form 10-Q for the second quarter of 2017 ("2Q 2017 10-Q," incorporated here by reference), in which TechnipFMC disclosed additional financial figures for the six months ending June 30, 2016 that the Registration Statement had misrepresented.

57.     As a result of Defendants' acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## V.     DEFENDANTS' FALSE AND MISLEADING STATEMENTS

58.     In the Registration Statement, the Company stated in part:

**Technip Financial Information**

Historical financial information of Technip included in this proxy statement/prospectus has been derived . . . from the unaudited interim condensed consolidated financial statements as of and for the six months ended June 30, 2016.

The historical consolidated financial statements of Technip are reported pursuant to International Financial Reporting Standards ("IFRS") as issued by the International Accounting Standards Board ("IASB") and are presented in Euro.

[. . .]

Technip's historical audited consolidated financial statements and unaudited interim condensed financial statements have been prepared in accordance with IFRS as issued by the IASB . . . .

[. . .]

The unaudited pro forma condensed combined financial information includes statements of income and statement of financial position of Technip . . . from the historical unaudited interim consolidated financial statements as of and for the six months ended June 30, 2016, prepared in accordance with IFRS as issued by the IASB.

59.    The statements referenced in ¶ 58 were materially false and/or misleading because:  (i) Technip's unaudited consolidated interim financial statements were prepared using an incorrect exchange rate and contained material inaccuracies, including errors in statements of net income, and so had not been prepared in accordance with IFRS; (ii) TechnipFMC failed to disclose that it had prepared its financial statements using an incorrect exchange rate, in violation of accounting standards; and (iii) TechnipFMC's statements that its financial statements were prepared in accordance with International Financial Reporting Standards suggested to investors that TechnipFMC's financial reporting system was reliable, when in fact TechnipFMC's financial reporting was unreliable due to ongoing foreign exchange calculation errors.

60.    In the Registration Statement, the Company further stated in part:

TRANSLATION OF FINANCIAL STATEMENTS OF SUBSIDIARIES IN FOREIGN CURRENCY

The income statements of foreign subsidiaries are translated into Euro at the average exchange rate prevailing during the year. Statements of financial position are translated at the exchange rate at the closing date. Differences arising in the translation of financial statements of foreign subsidiaries are recorded in other comprehensive income as foreign currency translation reserve. The functional currency of the foreign subsidiaries is most commonly the local currency.

61.    The statements referenced in ¶ 60 were materially false and/or misleading because:  (i) due to Technip's repeated use of wrong exchange rates, income statements of foreign subsidiaries were not properly translated into euros at the average exchange rate

prevailing during the year, and statements of financial position were not properly translated at the exchange rate at the closing date; and (ii) TechnipFMC failed to disclose that Technip was repeatedly preparing its financial statements using an incorrect exchange rate.

62.     In the Registration Statement, in a chart titled, "Technip Pro Forma Statement of Income for the Six Months Ended June 30, 2016 (Unaudited)," the Company further stated in part that the Company's "Historical Technip" "Net Income/(Loss) for the Period," for the six months ended June 30, 2016, was €237.4 million and that the Company's "Historical Adjusted Technip" "Net Income/(Loss) for the Period," for the six months ended June 30, 2016, was €233.9 million or $261.0 million.

63.     The statements referenced in ¶ 62 were materially false and/or misleading because:  (i) the Company's "Historical Technip" "Net Income/(Loss) for the Period," for the six months ended June 30, 2016, was not €237.4 million, but was instead materially less ($224 million or approximately €204.9 million[6]); and (ii) the Company's "Historical Adjusted Technip" "Net Income/(Loss) for the Period," for the six months ended June 30, 2016, was not €233.9 million or $261.0 million, but was instead materially less (approximately €204.9 million[7] or $224 million).

64.     In the Registration Statement, in a chart titled, "Results of Operations," the Company further stated in part that the Company's "Net Income/(Loss)" for the "Six months ended June 30, 2016," was €237.4 million and that the Company's "Earnings per Share (in Euro)" and "Diluted Earnings per Share (in Euro)" were €2.00 and €1.97 respectively.

65.     The statements referenced in ¶ 64 were materially false and/or misleading because:  (i) the Company's "Net Income/(Loss)" for the "Six months ended June 30, 2016," was

---

[6] *See supra*, note 4.

[7] *See supra*, note 4.

not €237.4 million, but was instead materially less (approximately €204.9 million[8] or $224 million); (ii) the Company's "Earnings per Share (in Euro)" and "Diluted Earnings per Share (in Euro)" were not €2.00 and €1.97 respectively, but were instead materially less (approximately €1.72[9] ($1.89) and €1.65[10] ($1.81) respectively).

66.     In the Registration Statement, in a chart titled, "Unaudited Pro Forma Condensed Combined Statement of Income for the Six Months Ended June 30, 2016," the Company further stated in part that the Company's "Historical Technip" "Net income" for the six months ended June 30, 2016, as defined in the Registration Statement, was $261.0 million, that the Company's "Historical Technip" "Net income/(loss) attributable to Technip," for the six months ended June 30, 2016, as defined in the Registration Statement, was $261.3 million, that the Company's "Pro Forma Condensed Combined" "Net income" for the six months ended June 30, 2016, as defined in the Registration Statement, was $242.4 million, and that the Company's "Earnings per share attributable to Technip," were $2.20 (Basic) and $2.16 (Diluted).

67.     The statements referenced in ¶ 66 were materially false and/or misleading because:  (i) the Company's "Historical Technip" "Net income" for the six months ended June 30, 2016, as defined in the Registration Statement, was not $261.0 million, but was instead materially less ($224.4 million); (ii) the Company's "Historical Technip" "Net income/(loss) attributable to Technip," for the six months ended June 30, 2016, as defined in the Registration Statement, was not $261.3 million, but was instead materially less ($224.7 million); (iii) the Company's "Pro Forma Condensed Combined" "Net income" for the six months ended June 30,

---

[8] *See supra*, note 4.

[9] Recalculated results of €204.9 (*see supra* note 4) divided by basic weighted average shares outstanding of 118.9 results in €1.72.

[10] Recalculated results of €204.9 (*see supra* note 4) divided by diluted weighted average shares outstanding of 124.5 results in €1.65.

2016, as defined in the Registration Statement, was not $242.4 million, but was instead materially less (approximately $205.5 million); (iv) the Company's "Earnings per share attributable to Technip," were not $2.20 (Basic) and $2.16 (Diluted), but were instead materially less ($1.89 and $1.81, respectively).

68.     On April 27, 2017, TechnipFMC issued a press release and filed a Current Report on Form 8-K with the SEC in which it announced certain of the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 8-K").  The Q1 2017 8-K stated in part:

> **TechnipFMC Reports First Quarter 2017 Diluted Earnings per Share of $0.41 . . . .**
>
> • **Company reported net income of $190.8 million . . . .**
>
> [. . .]
>
> Diluted earnings per share were $0.41 . . . .
>
> [. . .]
>
> Total Company net income was $190.8 million . . . .

69.     On May 4, 2017, TechnipFMC filed a Current Report on Form 10-Q with the SEC, reporting in full the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  The Q1 2017 10-Q reiterated the financial and operating results previously announced in the Q1 2017 8-K.  For the quarter, TechnipFMC reported net income of $190.80 million, or $0.41 per diluted share.

70.     The statements referenced in ¶¶ 68-69 were materially false and/or misleading because:  (i) the Company's Diluted earnings per share were materially less than $0.41 (-$0.04); (ii) total Company net income was materially less than $190.8 million (-$18.7 million).

71.     In the Q1 2017 10-Q, the Company stated further, in part:

*Foreign currency*—Financial statements of operations for which the U.S. dollar is not the functional currency, and are located in non-highly inflationary countries, are translated into U.S. dollars prior to consolidation.  Assets and liabilities are translated at the exchange rate in effect at the balance sheet date, while income statement accounts are translated at the average exchange rate for each period.

72.     The statements referenced in ¶ 71 were materially false and/or misleading because:  (i) assets and liabilities were not translated at the exchange rate in effect at the balance sheet date, and income statement accounts were not translated at the average exchange rate for each period, because TechnipFMC was systematically using incorrect exchange rates in such calculations; (ii) TechnipFMC failed to disclose that it had prepared its financial statements using an incorrect exchange rate, in violation of accounting standards; and (iii) TechnipFMC's statements falsely suggested to investors that TechnipFMC's financial reporting system was reliable, when in fact, TechnipFMC's financial reporting was unreliable due to ongoing foreign exchange calculation errors.

73.     In the Q1 2017 10-Q, the Company stated further, in part:

The accompanying unaudited condensed consolidated financial statements of TechnipFMC plc and its consolidated subsidiaries ("TechnipFMC") have been prepared in accordance with United States generally accepted accounting principles ("GAAP") . . . .

74.     The statements referenced in ¶ 73 were materially false and/or misleading because TechnipFMC was systematically using incorrect exchange rates in preparing its financial statements, so its financial statements were not in accordance with GAAP, including ASC 830-30-45-3.

75.     In the Q1 2017 10-Q, the Company stated further, in part:

ITEM 4. CONTROLS AND PROCEDURES

As of March 31, 2017, and under the direction of our principal executive officer and principal financial officer, we have evaluated the effectiveness of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act.  Based upon this evaluation, our principal executive

19

officer and principal financial officer have concluded as of March 31, 2017, that our disclosure controls and procedures were:

i)      effective in ensuring that information required to be disclosed in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms; and

ii)     effective in ensuring that information required to be disclosed in reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our principal executive officer and principal financial officer, as appropriate to allow timely decisions regarding required disclosure.

76.     The Q1 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

77.     The statements referenced in ¶¶ 75-76 were materially false and misleading because: (i) TechnipFMC had a material weakness in its internal control over rates used in the calculations of the foreign currency effects on certain of its engineering and construction projects; and (ii) accordingly, the Company lacked effective internal controls over financial reporting.

## VI.     SCIENTER ALLEGATIONS (ALLEGED <u>ONLY</u> FOR COUNTS III AND IV)

78.     The allegations in this Part VI relate only to Plaintiff's claims under Sections 10b and 20 of the Exchange Act (Counts III and IV).

79.     The size of the errors at issue in TechnipFMC's financial statements supports a strong inference of scienter.  In the Registration Statements, TechnipFMC overstated net income for the most recent period, the six months ending in June 2016, by approximately $36.6 million or 16.3%.  In its first quarter 2017 quarterly report, TechnipFMC overstated its net income for the first quarter by $209.5 million or approximately 1378%.  The Exchange Act Defendants

could not have failed to know about these massive errors.  Alternatively, if somehow the error was not expressly known to the Exchange Act Defendants, the Exchange Act Defendants were so extremely reckless in not knowing about the error that scienter may be ascribed to the Exchange Act Defendants.

80.     The simplicity of the errors behind Defendants' false and misleading statements further supports the strong inference that the Exchange Act Defendants were aware of these errors:   TechnipFMC simply used wrong exchange rates in converting financial data from foreign projects into the reporting currency.   No advanced understanding of accounting was necessary to discover or recognize this error.

81.     The repetition of the errors behind Defendants' false and misleading statements likewise supports a strong inference of scienter.   Defendants made the same basic error, *i.e.*, using the wrong exchange rate in preparing financial statements, in multiple financial statements over a period of more than a year.   Defendants had repeated opportunities to discover these massive, simple errors prior to the start of the Class Period, and so the likelihood that these errors were manifest to the Exchange Act Defendants by the start of the Class Period is extremely high.

82.     TechnipFMC announced in its July 27, 2017 earnings call for the second quarter of 2017 that there were "errors in the computation of certain FX results due to the use of incorrect rates," and that "[m]anagement identified the issue while reviewing the balance sheet position and future anticipated gains and losses."   That TechnipFMC management was able to identify the errors merely from reviewing the balance sheet shows that the errors were obvious to management and the Exchange Act Defendants (all of whom in their capacities reviewed the balance sheets in the Registration Statement and the Q1 2017 10-Q), or that the errors should

21

have raised sufficient concern for the Exchange Act Defendants to call for reasonable investigation.

83.    TechnipFMC, Pferdehirt and Mannen each knew that TechnipFMC misstated key financial data during the Class Period, and each knew the false and misleading nature of the statements discussed above, or at a minimum was reckless for not knowing these matters.

84.    Defendant Pferdehirt served as CEO and as a Director of TechnipFMC throughout the Class Period.  As CEO, Pferdehirt was the head of TechnipFMC's management and operations.  Pferdehirt, by virtue of his responsibilities and activities as CEO and Director of the Company, was privy to all material information concerning TechnipFMC's key financial figures, including its net income.  As CEO, Pferdehirt would have received any material information about TechnipFMC's key financial figures directly, or else immediately after any other employee at TechnipFMC received that information.

85.    Likewise, Mannen, as CFO and Executive Vice President, was privy to all material information concerning TechnipFMC's key financial figures, including its net income, and would have received any material information about TechnipFMC's key financial figures directly, or else immediately after any other employee at TechnipFMC received that information.

86.    The core of TechnipFMC's business is the generation of net income. Accordingly, TechnipFMC and the Exchange Act Individual Defendants were privy to all material information concerning TechnipFMC's net income.

87.    By virtue of their high-level positions, Pferdehirt and Mannen's knowledge may be imputed to TechnipFMC.

## VII.    CLASS ACTION ALLEGATIONS

88.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired TechnipFMC securities during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

89.     The members of the Class are so numerous that joinder of all members is impracticable. At all relevant times during the Class Period, TechnipFMC securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by TechnipFMC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

90.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

91.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

92.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of TechnipFMC;

- whether certain Defendants caused TechnipFMC to issue false and misleading financial statements during the Class Period;

- (for Counts III and IV only) whether Exchange Act Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of TechnipFMC securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

93.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

94.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- the Company's securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold TechnipFMC securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

95.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

96.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### VIII.   NO SAFE HARBOR

97.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements (with respect to Counts III and IV only) because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was

authorized or approved by an executive officer of TechnipFMC who knew that the statement was false when made.

## IX.    COUNT ONE

### Violation of Section 11 of the Securities Act
### Against the Securities Act Defendants

98.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct. Plaintiff expressly disavows reliance on, or incorporation of, any allegation of fraud, recklessness or intentional misconduct for purposes of claims under the Securities Act.

99.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Securities Act Defendants.

100.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

101.    TechnipFMC is the registrant for the Offering.  Securities Act Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

102.    As issuer of the shares, TechnipFMC is strictly liable to Plaintiff and the Class for the misstatements and omissions.

103.    None of the Securities Act Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

104.    By reasons of the conduct herein alleged, each of the Securities Act Defendants violated, and/or controlled a person who violated Section 11 of the Securities Act.

105.     Plaintiff and the Class acquired TechnipFMC securities pursuant and/or traceable to the Registration Statement.

106.     Plaintiff and the Class have sustained damages.   The value of TechnipFMC securities has declined substantially subsequent to and due to the Securities Act Defendants' violations.

## X.     COUNT TWO

### Violation of Section 15 of the Securities Act
### Against the Securities Act Individual Defendants

107.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct. Plaintiff expressly disavows reliance on, or incorporation of, any allegation of fraud, recklessness or intentional misconduct for purposes of claims under the Securities Act.

108.     This count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

109.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of TechnipFMC within the meaning of Section 15 of the Securities Act.   The Securities Act Individual Defendants had the power and influence and exercised the same to cause TechnipFMC to engage in the acts described herein.

110.     The Securities Act Individual Defendants had reasonable grounds to believe in the existence of the facts by reason of which TechnipFMC is liable under Section 11 of the Securities Act.

111.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## XI.    COUNT THREE

### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants

112.    Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

113.    During the Class Period, the Exchange Act Defendants made, disseminated or approved the false and misleading statements specified above.  The Exchange Act Defendants knew that such statements, when made, were false and misleading, or were reckless in their disregard as to the truth of such statements, which contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

114.    The Exchange Act Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    employed devices, schemes, and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and other members of the Class in connection with their acquisitions of TechnipFMC securities during the Class Period.

28

115.   Plaintiff and other members of the Class have suffered damages in that, in reliance on the Exchange Act Defendants' statements and the integrity of the market, they paid artificially inflated prices for TechnipFMC's securities.  Plaintiff and other members of the Class would not have purchased such securities at the prices they paid, or at all, if they had been aware that the market prices of such securities had been artificially and falsely inflated by Defendants' misleading statements.

116.   As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of TechnipFMC's securities during the Class Period.

## XII.   COUNT FOUR

### Violation of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants

117.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

118.   During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of TechnipFMC, and conducted and participated, directly and indirectly, in the conduct of TechnipFMC's business affairs.  Because of their senior positions, they knew the adverse non-public information about TechnipFMC's misstatement of income and expenses and false financial statements.

119.   As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to TechnipFMC's financial condition and results of operations, and to correct promptly any public statements issued by TechnipFMC that had become materially false or misleading.

120.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which TechnipFMC disseminated in the marketplace during the Class Period concerning TechnipFMC's results of operations.   Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause TechnipFMC to engage in the wrongful acts complained of herein.   The Exchange Act Individual Defendants therefore, were "controlling persons" of TechnipFMC within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged, which artificially inflated the market price of TechnipFMC securities.

121.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of TechnipFMC.   By reason of their senior management positions and/or being directors of TechnipFMC, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, TechnipFMC to engage in the unlawful acts and conduct complained of herein.   Each of the Exchange Act Individual Defendants exercised control over the general operations of TechnipFMC and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

122.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by TechnipFMC.

### XIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Appointing Plaintiff as representative for the Class and his counsel as class counsel for the Class;

C.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Such other and further relief as the Court may deem just and proper.

## XIV.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury in this action.

Dated:  January 22, 2018                    Respectfully submitted,

POMERANTZ LLP

*/s/ Austin P. Van*
Austin P. Van
(admitted pro hac vice)
Jeremy A. Lieberman
(Southern District No.:  1466757)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  avan@pomlaw.com
jalieberman@pomlaw.com

Willie C. Briscoe
(Texas Bar No.:  24001788)
(Southern District No.:  25157)
THE BRISCOE LAW FIRM, PLLC
3131 McKinney Avenue, Suite 600
Dallas, Texas 752014
Telephone:  (214) 643-6011
Facsimile:  (281) 254-7789
wbriscoe@thebriscoelawfirm.com

***Attorneys for Lead Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of January, 2018, I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Austin P. Van*
Austin P. Can