**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| JOSEPH PRAUSE, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>v.<br><br>TECHNIPFMC PLC, TORE HALVORSEN, and DIANNE B. RALSTON,<br><br>         Defendants. | Case No. 4:17-cv-02368<br><br>**UNOPPOSED MOTION & MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVE'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS** |

Class Representative Joseph Prause (the "Class Representative"), individually and on behalf of the Class,[1] respectfully move the Court for the entry of orders: (i) granting final approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated December 13, 2020 (the "Stipulation"[2]) filed with the Court on December 13, 2020, *see* ECF No. 205-1; and (ii) approving the proposed plan for allocating the settlement proceeds to the Class members.

---

[1] The "Class" or "Settlement Class" means all Persons and entities that purchased or otherwise acquired TechnipFMC Common Stock in the United States, including but not limited to TechnipFMC Common Stock acquired through the merger of FMC Technologies SIS Limited and Technip S.A. between January 16, 2017 and July 24, 2017, both dates inclusive. Excluded from the Class are Defendants; members of the Immediate Family of each of the Individual Defendants; the current and former Officers and directors of TechnipFMC; any person, firm, trust, corporation, Officer, or other legal entity in which any Defendant has or had a controlling interest; and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any persons or entities who or that have timely and validly sought exclusion from the Class, whose exclusion request is accepted by the Court.

[2] Unless otherwise defined, all capitalized terms have the same meanings in the Stipulation or the Declaration of Terrence W. Scudieri, Jr. (the "Scudieri Declaration" or "Scudieri Decl."), which is filed concurrently herewith. Unless otherwise noted, all citations to "¶" and "Ex." Refer, respectively, to paragraphs in, and exhibits to, the Scudieri Declaration. Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

## I. PRELIMINARY STATEMENT

The Scudieri Declaration is an integral part of this unopposed motion, and the Class Representative incorporates it herein. To avoid repetition, the Class Representative respectfully refers the Court to the Scudieri Declaration for a full discussion of the factual and procedural history of the Action, the claims asserted, the Class Representatives' investigation and discovery, the negotiations leading to the Settlement, and the numerous risks and uncertainties posed by continued litigation, all of which favor final approval of the Settlement.

## II. SUMMARY OF THE ARGUMENT

Following more than three years of spirited, adversarial litigation, full-day mediations before former Judge Daniel Weinstein, and subsequent arm's-length negotiations between the parties, the Class Representative and Defendants TechnipFMC plc ("TechnipFMC" or the "Company"), Tore Halvorsen ("Halvorsen"), and Dianne B. Ralston ("Ralston") (collectively, the "Defendants"), have agreed to settle the above-captioned matter (the "Action") for a total of $19,500,000 (the "Settlement") for the benefit of the Settlement Class. The terms of the Settlement are set forth in the Stipulation filed with the Court on December 13, 2020. *See* ECF No. 205-1. Upon approval, the Settlement will resolve this Action in its entirety. The Class Representative and his counsel, well-informed of the strengths and weaknesses of the claims and defenses in the Action, now seek the Court's final approval of the Settlement and the proposed Plan of Allocation pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

The Court preliminarily approved the terms of the Settlement by an order dated December 16, 2020. *See* ECF No. 207 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Summary Notice was published in *Investor's Business* Daily and transmitted over the *P R* Newswire, and 55,060 copies of the Notice have been timely mailed to potential Class members and nominees. *See* Scudieri Decl., Ex. 1 ¶¶ 10–13. To date, no

potential Class member has objected to, any aspect of the Settlement. Only ten (10) potential Class Members have requested exclusion, on grounds that such persons are not Class Members. *Id.*, Ex. 1 ¶ 14. "The extremely small number of opt-outs suggests a favorable opinion by the absent class members." *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *14 (N.D. Tex. 2011). Accordingly, the Class Representative respectfully requests that the Court enter an order of final approval of the Settlement.

Additionally, the Class Representative seeks the Court's final approval of the proposed Plan of Allocation ("POA"), which was set forth in the Notice mailed to potential Class Members. The POA, developed in consultation with Class's damages expert, provides a reasonable method for allocating the Net Settlement Fund equitably among the Class members who submit valid claims based on the damages they suffered and the different categories of claims each Class member possesses. Accordingly, the Class Representative respectfully submits that the Court should approve the POA.

As discussed in greater detail below, the Class Representative and Class Counsel respectfully submit that that the Settlement and the POA are fair, reasonable, and adequate, warranting the Court's final approval.

### III. ARGUMENT

#### A. The Proposed Settlement Warrants Final Approval Under Rule 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement or compromise. The Court's review proceeds in two steps: (1) "preliminary approval" and then (2) "final approval after a fairness hearing." *Del Carmen v. R.A. Rogers, Inc.*, SA-16-CA-971-FB (HJB), 2018 WL 4701824, at *5 (W.D. Tex. Apr. 25, 2018).

### 1. The Public Interest Favors Approval of Class Action Settlements

There is an "overriding public interest in favor of settlement" because class actions "have a well-deserved reputation as being most complex." *Cotton v. Hinton*, F2d 1326, 1331 (5th Cir. 1977). Settlements are also favored because they reduce "[t]he time and cost of further litigation." *Aron v. Crestwood Midstream Partners LP*, 2016 U.S. Dist. LEXIS 152427, at *10 (S.D. Tex. Oct. 14, 2016) (citation omitted).

### 2. The Rule 23(e) and *Reed* Factors Are Satisfied

The Court's inquiry at the final approval stage is whether the proposed settlement is "fair, adequate, and reasonable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (citation omitted). Where, as here, a settlement "is reached as the result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and 'ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy.'" *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *6 (W.D. La. 2015) (quoting *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1008 (5th Cir. 1982)). Courts are therefore "'hesitant to substitute [their] own judgment for that of counsel'" in the absence of "'fraud, collusion, or the like.'" *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 425 (S.D. Tex. 1999) (quoting *Cotton*, 559 F.2d at 1330).

Courts look to two interrelated but distinct sets of requirements to ascertain whether a proposal fair, adequate, and reasonable: (1) common-law rules and (2) the text of Rule 23(e)(2). As to the common-law rules, the Fifth Circuit has long endorsed courts' assessment of six non-exclusive "*Reed* factors," which consider:

> '(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on

the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.'

*Dell*, 669 F.3d at 639 & n.11 (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

As for Rule 23(e)(2), courts must consider the following four factors: (1) whether "the class representatives and class counsel have adequately represented the class;" (2) whether "the proposal was negotiated at arm's length;" (3) whether "the relief provided is adequate," considering (i) "the costs, risk, and delay of trial and appeal," (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)[3];" and (4) whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Importantly, because the Rule 23 requirements "are not meant to 'displace any factor' sanctioned by the circuit courts,'" the Court should consider them "in light of the *Reed* factors." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 485 (E.D. La. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment). The

---

[3] As set forth in ¶ 38 of the parties' Stipulation and Agreement of Settlement, the Class Representative and the Defendants are parties to a Supplemental Agreement, pursuant to which Defendants shall have the sole option to terminate the settlement upon the occurrence of certain conditions precedent. The Supplemental Agreement "shall not be filed with the Court and its terms shall not be disclosed in any other manner . . . unless and until the Court otherwise directs or a dispute arises between the Class Representative and Defendants concerning its interpretation or application." *Id.* Such confidentiality agreements are executed routinely in securities class actions "'to encourage settlement'" and to disincentivize "third parties from soliciting class members to opt out.'" *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) (quoting *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) (unpublished)).

first and second Rule 23 factors identify "'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while the third and fourth factors center upon a "'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

### a. The Procedural Requirements Are Satisfied

The "procedural" requirements of Rule 23(e)(2) concern the adequacy of the Class's representation of absent Class Members and whether the proposed settlement resulted from arm's-length negotiations. Fed. R. Civ. P. 23(e)(2)(A)–(B). Among other things, courts consider "whether counsel negotiating on behalf of the class had an adequate information base" and whether "a neutral or court-affiliated mediator" facilitated the negotiations, so as to "protect and further the class interests." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Here, the diligent and zealous representation by the Class Representative and Class Counsel, including extensive discovery and motion practice, led to an arm's-length mediation before two neutral and independent arbiters, culminating in a procedurally fair resolution on behalf of the Class.

#### (1) Adequacy of Class Representative & Class Counsel

The Class Representative and Class Counsel have well-represented the interests of the Class. Early in this litigation, the Class Representative sought appointment as Lead Plaintiff to maximize recovery on behalf of a class of similarly-situated individuals. *See* Mem. of P. & A. in Supp. of Mot. of Joseph Prause for Appointment as Lead Pl. & Approval of Counsel, ECF No. 20 (Oct. 2, 2017). "'Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict'" between representatives and absent class members. *In re Signet*

*Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020) (McMahon, C.J.).[4] The Class Representative also adequately represented the Class by selecting counsel that is highly experienced in litigating securities class actions. *See* Scudieri Decl., Ex. 2-C.

Class Counsel also safeguarded the Class's interests by, among other things, performing an exhaustive investigation of all publicly-available documents concerning TechnipFMC and the Class's claims, engaging a private investigator who interviewed former employees and third parties, filing an amended complaint, successfully briefing and arguing an opposition to Defendants' motion to dismiss the amended complaint, a motion for class certification, and several pre-trial motions, including competing dispositive motions for summary judgment.

Class Counsel's representation was also adequate because they "possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" throughout the course of the litigation. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012). Class Counsel reviewed approximately 50,000 pages of documents produced by Defendants and additional documents produced by third parties, and engaged and consulted with experts on merits-related issues. The instant settlement is not "the product of uneducated guesswork," *Melby v. America's MHT, Inc.*, 2018 WL 10399004, at *9 (N.D. Tex. June 22, 2018) (Lynn, C.J.), but instead comes on the eve of trial, after the close of discovery, and after extensive good-faith negotiations between the parties. *See Reed*, 703 F.2d at 172 (the third *Reed* factor assesses "the stage of the proceedings and the amount of discovery completed."). Accordingly, the conduct of the Class Representative and of

---

[4] Moreover, in its Order granting Lead Plaintiff's Motion for Class Certification, this Court concluded that the Class Representative's "claim 'has the same essential characteristics of those of the putative class,' because each class member's claim arises from the same allegedly false and misleading information[.]" Order, ECF No. 96 at 7 (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)) (alterations adopted).

Class Counsel adequately protected the absent Class Members and supports approval of the proposed settlement.

### (2) *Arm's-Length Negotiations*

The proposed settlement is the product of arm's-length negotiations between the Class Representative and the Defendants, facilitated by the Honorable Daniel Weinstein and Ambassador David Carden. Rule 23(e)(2)(B)(ii) and the first *Reed* factor collectively test whether there was "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172. Where parties arrive at a favorable settlement with the aid of a neutral third party, courts routinely find that the resulting proposal is non-collusive. *See, e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (Lynn, C.J.) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 2006 WL 8451358, at *6 (E.D. La. Sept. 7, 2006) (same) (citing *Murillo v. Tex. A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996)).

The parties' negotiations included full-day mediations before retired Judge Weinstein and Ambassador David Carden on September 20, 2019 and March 18, 2020, and culminated in mediation discussion facilitated by Ambassador Carden in early November 2020. In advance of the September 20, 2019 mediation, Class Counsel and Defendants' counsel exchanged detailed mediation statements setting forth the strengths, weaknesses, and risks of their respective positions, together with supporting exhibits. After the March 18, 2020 mediation, counsel for the parties continued to negotiate in good faith and ultimately agreed to resolve the action for $19,500,000 in cash. *See Rodriguez v. Stage 3 Separation, LLC*, 2015 WL 12866212, at *3 (W.D. Tex. Dec. 23, 2015) (where "parties attest that they 'engaged in arm's-length and extended settlement negotiations, including a full-day mediation,'" courts generally conclude that the proposal is not result of fraud or collusion); *Claudet v. Cytec Ret. Plan*, 2020 WL

3128611, at *4–*5 (E.D. La. June 12, 2020) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (settlement agreements borne of "a hard-fought negotiation between experienced counsel that occur[] after significant discovery and motion practice" establish a "strong presumption" that the settlement is "not tainted by fraud or collusion.").

### b. The Substantive Requirements Are Satisfied

The "substantive" requirements for final approval test the adequacy of the relief provided for the Class and whether the proposal "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)–(D).

#### (1) *Adequacy of the Relief*

Rule 23(e)(2)(C), together with the second, fourth, and fifth *Reed* factors, require a proposed settlement agreement to "fall within a reasonable range" in view of "the likelihood of the plaintiffs' success on the merits." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010) (emphasis omitted); *Reed*, 703 F.2d at 172 (courts consider "the complexity, expense, and likely duration of the litigation," the "probability of plaintiffs' success on the merits," and "the range of possible recovery."). To ascertain the probability of success on the merits, courts "compare the terms of the settlement the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). Still, "the very purpose of the compromise is to avoid the delay and expense of such a trial," *Reed*, 703 F.2d at 172, so that the substantive adequacy test is satisfied even "when the class's likelihood of success on the merits is questionable." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *9 (S.D. Tex. Jan. 23, 2015) (citing *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326–27 (5th Cir. 1981)). Absent bad faith or collusion, the substantive adequacy factor nearly always weighs "strongly" in favor of final approval. *O'Donnell v. Harris Cnty.*, 2019 WL 6219933, at *13 (S.D. Tex. Nov. 21, 2019) (Rosenthal, C.J.).

The second, fourth, and fifth *Reed* factors, respectively, consider "the complexity, expense, and likely duration of the litigation," the "probability of plaintiffs' success on the merits," and "the range of possible recovery." *Reed*, 703 F.2d at 172. Each factor is readily met here, counseling final approval of the proposed Settlement. *First*, the second *Reed* factor, "the complexity, expense, and likely duration of the litigation," favors settlement because continued litigation through trial doubtless inheres additional complexity, cost and time. "Securities class actions are notoriously complex" and "expensive to litigate." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) (McMahon, C.J.) (internal quotation marks and citation omitted). Indeed, a successful "securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 253 (5th Cir. 2009). This action is no different. Defendants vigorously have challenged the Class Representative's claims at each stage of this litigation. Absent settlement, the Class Representative and the Defendants are certain to face even more extensive, costly litigation.

For example, pending before the Court are the parties' motions for summary judgment, motions in limine, and several miscellaneous sealed motions. The resolution of these motions will require Class Counsel and Defendants' counsel to undertake hundreds of more hours of preparation for argument and possibly further briefing. The Court's resolution of these complex motions could take several months or longer. Such hurdles—not uncommon to complex securities class actions—pose no small task and could add years to this litigation.

*Second*, the fourth *Reed* factor, "probability of plaintiffs' success on the merits," favors settlement because although the Class Representative and Class Counsel are confident in the merits of their claims against the Defendants, success is never guaranteed. *See, e.g.*, *Scott v.*

10

*Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("Securities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case."). Defendants adamantly contest Class Representative's surviving claims, and intend to argue before a jury, among other things, that Defendants' statements were not materially misleading and that such statements did not cause the Class Members' losses. The risks inherent in trial weigh heavily in favor of approving the proposed settlement because "there is no way of predicting which interpretations, inferences or testimony a jury would accept." *Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013). Even with the best facts, issues of loss causation and damages in securities actions are often reduced to an unpredictable, expensive "battle of the experts." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

*Third*, the fifth *Reed* factor, "the range of possible recovery" favors settlement because the settlement would provide an immediate cash recovery of $19,500,000. Such a result is well-within the range of reasonableness warranting approval of the Settlement and the proposed POA. The Class Representative's damages expert estimates that if the Class Representative fully prevailed on each of the remaining claims against Defendants at both summary judgment and at trial, and if the Court and jury were to accept the Class Representative's damages theory (including proof of loss causation, an issue Defendants challenged in their motions to dismiss) on both alleged corrective disclosures, the maximum estimated theoretical damages would be approximately $235 million. Such damages would be recoverable only in the best of all scenarios.

Nevertheless, Rule 23(e)(2)(C) neither contemplates nor requires the Court to "justify each term of settlement against a hypothetical or speculative measure." *Cotton*, 559 F.2d at

1330. Under the Class Representative's estimated best-case scenario, assuming that 100% of the Class Members file a valid Proof of Claim and no confounding variables, the Stipulation represents a recovery ration of approximately 5.5 percent. Such a recovery ratio is above the national average. *See* Scudieri Decl., Ex. 4 (finding median settlement between 1996 and 2018 in securities cases with investor losses between $400 million and $599 million recovered 1.8% of investor losses). Furthermore, a recovery of $19,500,000 far exceeds the 2019 national and Fifth Circuit settlement recovery averages; the median 2019 settlement amount nationally was $11.5 million, while the median sum in the Fifth Circuit between 2019 and 2019 was $9.9 million. *Id. See also In re Giant Interactive Grp., Inc.*, 278 F.R.D. 151, 163 (S.D.N.Y. 2011) (recovery of 3% of maximum damages was "average").

The uncertainties of continued litigation pose a considerable risk that the Class would receive a smaller recovery than that proposed by the Settlement or no recovery at all. And while a Settlement of $19,500,000 is a healthy recovery in its own right—providing immediate, certain recovery that exceeds the national and local average—it is even more favorable given the Company's current financial position and the time and expense of potentially several more years of litigation will likely imbue, and the uncertainty of total success at each such subsequent stage of litigation. Accordingly, the Court should conclude that the proposed Settlement provides adequate relief to the Class.

**(2)** *The Other Rule 23(e)(2)(C) Adequacy Factors Also Support Approval*

Rule 23(e)(2)(C) also tests the adequacy of relief to the Class in view of (i) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (ii) "the terms of any proposed award of attorneys' fees, including time of payment," and (iii) "any agreement required to be identified under Rule

23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv). Each of these factors weighs in favor of Settlement here.

*First*, the Class Representative's proposed method for distributing the Settlement proceeds to the Class weighs in favor of approval. The proposed Plan of Allocation would distribute the net Settlement proceeds among the Class Members proportionally as to each such Class Member's respective losses, without favor to or disregard of any Class Member. Specifically, the proposed Plan of Allocation would distribute to each Class Member his, her, or its equitable share of the Net Settlement Fund, so long as such Class Member timely submits a valid Claim Form to the Administrator. *See* Scudieri Decl., Ex. 1-A. The Class Representative and Class Counsel have retained an experienced Claims Administrator tasked with calculating each Authorized Claimant's *pro rata* share based upon his, her, or its respective Recognized Loss. Such a method for distributing the Settlement proceeds among and between a sizeable Class is unbiased and accords neither favor to the Class Representative nor disfavor to any Class Member. Accordingly, the proposed Plan of Allocation is an unbiased, efficient method of allocating the funds to all eligible Class Members.

*Second*, as disclosed in the Notice, Class Counsel have been diligently litigating this matter on a wholly contingent basis since its inception in 2017 and have not, to date, received any fees for, or recompense of the expenses associated with, providing their services to the Class. Thus, having conferred a substantial benefit upon the Class, and as explained in the Notice, Class Counsel will seek an award of reasonable attorneys' fees not to exceed 33% of the Settlement Fund, plus reimbursement of their reasonable expenses. Indeed, the "use of a common fund to pay attorney's fees in class action settlements is well established." *O'Neal*, 705 F. Supp. 2d at 673.

Courts analyzing fee requests in securities class actions consider the "time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014). In doing so, courts routinely uphold awards of attorneys' fees of one-third of the total settlement as inherently reasonable. *See id. See also Miller v. Global Geophysical Servs., Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016); *In re Crestwood Midstream Partners Unitholder Litig.*, 2014 WL 10742633, at *3 (S.D. Tex. May 16, 2014).

By its express terms, and as is standard in securities class actions, attorneys' fees and expenses will be paid upon any such award granted by the Court, and shall be reimbursed to the Settlement Fund if the award is reduced or reversed in any subsequent legal proceedings. *See* Stipulation ¶ 17. Furthermore, the Settlement is designed so that the Court's approval of the Settlement is wholly independent of the Court's approval of Class Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses. *See id.* ("An award of attorneys' fees and/or Litigation Expenses is not a necessary erm of this Stipulation and is not a condition of the Settlement embodied herein."). Moreover, "[n]either the Class Representative nor Class Counsel may cancel or terminate or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses." *Id.* Accordingly, the Court should conclude that the additional Rule 23(e)(2)(C) factors are satisfied.

    c.    **The Terms of the Settlement Are Equitable to All Class Members**

Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, thus ensuring that the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Courts routinely

14

find that proposed settlements that "treat[] every member of the Class in a similar manner," *viz.*, where "everyone who submits a valid and timely claim gets a *pro rata* share of the Net Settlement Fund in the proportion that his, her or its recognized loss bears to the total of all recognized losses," meet the Rule's requirement. *In re Waste Mgmt. Sec. Litig.*, 2002 WL 35644013, at *8 (S.D. Tex. May 10, 2002). Here too, the proposed Plan of Allocation does not accord preferential treatment to any Class Member, group of Class Members, or to the Class Representative. Accordingly, the Court should conclude that the terms of the proposed Settlement treat all Class Members equitably.

### 3. Class Counsel and the Class Representative Favor the Stipulation

The sixth and last *Reed* factor encourages courts to consider "the opinions of the class counsel, class representatives, and absent class members" when adjudicating motions for settlement approval. *Reed*, 703 F.2d at 712. Indeed, "the endorsement of class counsel is entitled to deference, especially in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292 (W.D. Tex. 2007). Though not dispositive, courts often consider the opinions of class counsel regarding the fairness of settlement because such "[c]ounsel are the Court's main source of information about the settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). As indicated above and in Exhibit 2-C to the attached Scudieri Declaration, Class Counsel have decades of complex securities class action litigation experience and have in this case conducted an extensive investigation, overcome the arguments of equally-seasoned and respectable opposing counsel, reviewed thousands of documents, consulted with experts, and have brought this matter to a fair resolution with the aid of a third-party mediator. Accordingly, Class Counsel respectfully submit that their opinions are entitled to the Court's consideration as it decides the instant motion.

For all of the foregoing reasons, the Class Representative respectfully requests that the Court preliminarily approve the Settlement by finding that its terms are fair, reasonable, and adequate in accordance with the requirements set forth by *Reed* and by Rule 23(e).

### B. Notice to the Settlement Class Satisfied Rule 23 and Safeguarded the Class Members' Due Process Rights

The Court previously considered and preliminarily approved procedure by which the Class Representative provided Notice to the Settlement Class, *see* Preliminary Approval Order ¶¶ 5–13, and the Class Representative has disseminated notice to the Settlement Class in accordance with those procedures. *See* Scudieri Decl., Ex. 1.

The Class Representative's Notice satisfied Rule 23(c)(2)(B)'s requirement, as it was "the best notice that is practicable under the circumstances," and provided "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Additionally, Rule 23(e)(1) requires that notice of a settlement be "reasonable." This requirement is met where, as here, the notice "adequately described the nature of the pending action, the claims asserted therein, and the general terms of the proposed settlement," and also "informed the shareholders that additional information was available from the court's files," and "of the time and place for the settlement hearing and their right to participate therein." *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (collecting cases). Additionally, the Notice apprised potential Class Members of their right to submit a claim, to opt-out of the Class, or to file objections to the proposal for the Court's consideration. *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (citation omitted)

The Notice also satisfied the PSLRA's requirement to provide the "best notice" to potential Class Members. Specifically, each reasonably identifiable potential Class Member received (i) a statement of "[t]he amount of the settlement proposed to be distributed to the

16

parties to the action, determined in the aggregate and on an average per share basis," (ii) "a statement from each settling party concerning the issue or issues on which the parties disagree," (iii) a "statement indicating which parties intend to" seek "an award of attorneys' fees or costs from any fund established as part of the settlement," including "the amount of fees and costs that will be sought," together with "a brief explanation supporting the fees and costs sought," (iv) a statement of "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained" in the Notice, (v) "[a] brief statement explaining the reasons why the parties are proposing the settlement," and (vi) "[s]uch other information as may be required by the court." 15 U.S.C. §§ 78u–4(a)(7)(A)–(F).

Moreover, the Class Representative executed the Court-approved notice program in strict accordance with the mandates of the Preliminary Approval Order. Notice was given to Class Members and nominees via mailed notice, the Settlement website, and publication. *See* Scudieri Decl., Ex. 1. As of February 9, 2021, the Claims Administrator has mailed 55,060 copies of the Notice to potential Class Members and nominees. *See id.*, Ex. 1 ¶ 10. In addition, on February 1, 2021, Class Counsel caused the Summary Notice to be transmitted once over the *P R Newswire* and published once in the *Investor's Business Daily*. *See id.*, Ex. 1-B. Furthermore, the Claims Administrator maintains, and updates as required, a website dedicated to the Settlement. *See id.*, Ex. 1 ¶ 13. Courts have held that such a combination of individual mail to reasonably identifiable Class Members, supplemented by notice online, over newswire, and in a widely-circulated publication is adequate and routine in securities class actions, *In re Anadarko Petroleum Corp.*, 2014 WL 12599393, at *1 (S.D. Tex. Sept. 11, 2014), and that such a notice program satisfies "the requirements of Rule 23, . . . due process, and the Rule of this Court, and

is the best notice practicable under the circumstances." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *9 (N.D. Tex. Nov. 8, 2005). Like the *Anadarko* and *Schwartz* courts, this Court should also conclude that the substance of the Notice and procedures by which it was distributed to the Class "constitute[d] due and sufficient notice to all persons entitled thereto." *Id.*

### C. The Plan of Allocation Satisfies Rule 23 and Safeguards the Class Members' Due Process Rights

In the Preliminary Approval Order, the Court also preliminarily approved the Class Representative's proposed POA. *See* Preliminary Approval Order ¶ 2. "The standard for approving a plan of distribution is the same as the standard for approving the settlement: the plan must be 'fair, adequate, and reasonable' and must not be 'the product of collusion between the parties.'" *Buettgen*, 2013 WL 12303143, at *9 (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 238 (5th Cir. 1981)). The Court's analysis is "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Chicken*, 669 F.2d at 238. Further, courts have held that "an allocation or distribution formula need only have a reasonable basis, particularly if recommended by experienced class counsel." *Buettgen*, 2013 WL 12303143, at *9 (citation omitted); *see also Dell*, 2010 WL 2371834, at *10 (same). Here, the Class Representative's proposed POA is included in the Notice, and thus was disseminated to the Class by mail, newswire, and publication. *See* Scudieri Decl. ¶¶ 67–71 & Ex. 1 ¶¶ 10–11. Additionally, the Plan of Allocation, as set forth in the Notice, has been and remains posted on the Settlement website. *See id.* ¶ 69 & Ex. 1 ¶ 13.

Courts routinely approve of such plans of allocation, especially where they are "formulated by [Class] Counsel with assistance from its materiality and damages experts." *Schwartz*, 2005 WL 3148350, at *8. Here, the Plan of Allocation was developed by Class Counsel in consultation with a damages expert, with the express objective of equitably

18

distributing the Net Settlement Fund among all persons or entities who are entitled to share in the Settlement. *See* Scudieri Decl. ¶¶ 74–86.

Additionally, where a proposed plan of allocation provides that "each Class Member will receive his or her [or its] *pro rata* share of the funds based on the calculation of recognized losses," courts find as a matter of course that such proposals are "fair and reasonable because [they] appear[] to be rationally based on Class members' proportionate losses," which "is clearly a reasonable approach" to allocating settlement funds in securities class actions. *LHC Grp.*, 2015 WL 965693, at *15 (collecting cases). *See also Marcus v. J.C. Penney Co.*, 2017 WL 6590976, at *5 (E.D. Tex. Dec. 18, 2017) (same).

Here too, the proposed POA considers, *pro rata*, the losses that each Class Member suffered as a result of Defendants' alleged misconduct. Class Counsel's damages expert employed sophisticated financial analyses to calculate the estimated amount of artificial inflation in the per share closing prices of TechnipFMC's stock attributable to Defendants' allegedly materially false and misleading statements and omissions. *See* Scudieri Decl. ¶ 76. In doing so, Class Counsel's damages expert considered price changes in the Company's common stock in reaction to the alleged corrective disclosures, adjusting for market or industry factors. *Id.* ¶¶ 76–86. Under the proposed POA, a "Recognized Loss" will be calculated for each purchase of TechnipFMC common stock for which adequate documentation is provided. *Id.* ¶ 73. The methodology of this calculation is explained in detail in the Notice and incorporates several factors, including *inter alia* when and for what price a Class Member purchased or sold his, her, or its shares, together with the estimated artificial inflation in the shares' prices at the time of purchase and sale, as determined by Class Counsel's damages expert. *Id.* ¶ 74. Accordingly, the POA is fair and reasonable because it "allocate[s] money depending on the timing of

purchases and sales of the securities at issue," as is "common" in securities class action settlements. *In re Datatec Sys. Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2008).

Additionally, no objections to the proposed POA have been filed, suggesting that the Class Members agree that the proposed POA is fair, adequate, and reasonable. *See In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6649018, at *1 (W.D. Tex. Dec. 6, 2019) (approving a plan of allocation where, as here, no objections had been received). Accordingly, the Court should approve the Class Representative's proposed Plan of Allocation.

## IV. CONCLUSION

For all of the foregoing reasons, Court should grant final approval of the Settlement and of the Class Representative's Plan of Allocation because each is fair, reasonable, and adequate.

Respectfully submitted,

Dated: February 12, 2021

*/s/ Austin P. Van*
Austin P. Van
(admitted *pro hac vice*)
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

*Class Counsel*